# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PETER BOWSE,

    Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

    Defendant.

No. 15 C 4037
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In December 2014, Portfolio Recovery Associates (PRA) provided credit information about Peter Bowse to three credit reporting agencies without mentioning that Bowse disputed the amount of debt he owed PRA. Peter Bowse sued PRA, alleging that PRA violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (FDCPA) by failing to communicate a dispute about his debt.

Both Bowse and PRA now file for summary judgment. For the reasons stated below, the Court denies PRA's motion and grants Bowse's motion.

## BACKGROUND

The following facts are undisputed. Peter Bowse obtained a credit card from FIA Card Services/Bank of America and testifies that he used this card to purchase household items, gas, and school supplies. Bowse does not testify that he used the card for any business expense, nor has PRA put forward any evidence that the card was used for business purposes. The credit card account went into default, and PRA purchased the account from FIA in July 2013. PRA eventually filed a lawsuit against Bowse to collect $7,528.84.

Bowse met with the Debtors Legal Clinic about representing him in the PRA lawsuit and

1

discussed his case with attorney Andrew Finko. After this discussion, Finko faxed a letter to PRA's general counsel on July 17, 2014 ("the July 2014 letter") concerning Peter Bowse's debt. The five-paragraph letter, titled "Representation Letter," informed PRA that Bowse would be represented by Debtors Legal Clinic, that Bowse was not able to pay the debt, and that the "amount reported is not accurate."

After receiving this letter, PRA informed three credit reporting agencies, Transunion, Experian, and Equifax, that Bowse had a balance of $7,528.84 on his account. PRA did not mention to these credit reporting agencies that the debt was disputed. Plaintiff argues that he disputed the debt when his attorney faxed the July 2014 letter to PRA's general counsel, and PRA's failure to indicate to the credit reporting agencies that the amount of debt was disputed violated 15 U.S.C. § 1692e(8), which requires debt collectors to "to communicate that a disputed debt is disputed." Both Bowse and PRA now move for summary judgment.

## LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering the Plaintiff's Motion for Summary Judgment, the Court considers the facts in the light most favorable to the Defendant, and when considering the Defendant's Motion for Summary Judgment, the facts are considered in the light most favorable to the Plaintiff. *See*

*First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) ("[B]ecause the district court had cross-motions for summary judgment before it, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted).

## DISCUSSION

### I. Standing

PRA contends that Bowse lacks Article III standing to sue in federal court. To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' that is, 'an invasion of a legally protected interest which is...concrete and particularized, and...actual or imminent'; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is 'fairly traceable' to the challenged conduct; and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). PRA argues that Bowse has not suffered an "injury in fact," citing the recent Supreme Court decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

In *Spokeo*, the Court considered whether a violation of a statutory right granted by the Fair Credit Reporting Act (FCRA) was a sufficient injury in fact to maintain an action in federal court. *Id.* at 1544. The defendant website operator generated a consumer report that inaccurately reported the plaintiff's marital status, age, employment status, salary, and educational history. *Id.* at 1546. The plaintiff alleged that the website operator violated the FCRA by generating this report, but the plaintiff did not allege that he suffered any monetary harm as a result of the FCRA violation. *Id.* The Supreme Court held that a violation of the FCRA alone was insufficient for Article III standing, as the plaintiff was also required to show a "concrete harm" that flowed

3

from the FCRA violation. *Id.* at 1549. The Court specifically limited its holding, noting that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. Among those circumstances are cases where a statutory violation creates the "risk of real harm." *Id*. While the Court in *Spokeo* highlighted the need for an injury to be concrete, the Court also affirmed the power of Congress to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*

The alleged harm here is the harm that results when a debt collector fails to report relevant information about a consumer debt to a third party. Even though this harm was not defined and articulated before Congress passed the FDCPA, it remains a concrete harm. The risk of injury that § 1692e(8) addresses is the risk of substantial financial harm caused by an inaccurate credit rating. Unlike an incorrect zip code, the "bare procedural violation" in *Spokeo*, an inaccurate credit rating creates a substantial risk of harm. *See Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14-CV-911-CWR-FKB, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016) ("Congress intended [§ 1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors. Plaintiff's alleged injury is more than a bare procedural violation, it is the very type of injury Congress sought to eradicate and thus created a right of action to protect consumers."). Other courts in this District have affirmed, post-*Spokeo*, that harms identified by the FDCPA are sufficiently concrete to confer Article III standing. *See Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016) ("[W]hile

*Spokeo* held that a procedural violation of the FCRA does not necessarily give rise to an injury in fact, it does not follow that the same holds true of violations of other statutes, including the FDCPA."); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *5 (N.D. Ill. July 11, 2016) ("[T]he prior Seventh Circuit decisions addressing the concreteness of FDCPA injuries survived *Spokeo*, which established some general principles but did not contain a holding specific enough to overrule Seventh Circuit law on the FDCPA.").

Because Bowse has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, Bowse has Article III standing to bring this suit.

## II.     Consumer Debt

PRA contends that Bowse has not met his burden of proving that the debt in dispute is the kind of debt covered by the FDCPA.

The FDCPA covers consumer debts rather than business debts. *See* 15 U.S.C. § 1692(a)(5). Bowse submitted an affidavit declaring that he used the credit card at issue solely for personal purposes. PRA argues that this affidavit is insufficient to establish that the debt is covered by the FDCPA.

PRA has not cited any case law that suggests the debtor's testimony cannot establish the nature of his debt, nor has PRA put forward any contrary evidence to call the trustworthiness of Bowse's declaration into question. Thus it is undisputed that Bowse used the credit card for personal expenses. As a result, it is consumer debt covered by the FDCPA.

## III.    The July 2014 Letter

Both parties argue they are entitled to summary judgment when the undisputed facts of this case are applied to the requirements of FDCPA § 1692(e)(8), which provides the following:

5

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section. . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692(e)(8)

The parties disagree about whether Bowse's debt was ever "disputed" under the meaning of the FDCPA. Bowse argues that the July 2014 letter constitutes a clear dispute, triggering PRA's obligation to inform third parties of a dispute when providing credit information. PRA raises two main arguments in support of its Motion for Summary Judgment. First, PRA argues that the letter came from Bowse's attorney rather than Bowse, thus the letter only disputed the debt if Bowse's attorney was given specific instruction to dispute the debt. Second, PRA argues that the meaning of the July 2014 letter was unclear, given the letter's context.

**A. The Letter's Author**

PRA argues that an attorney can only dispute a debt on behalf of a client if the client has previously conveyed an intention to dispute his debt to the attorney. PRA argues that the record shows Bowse never conveyed such an intention to his attorney, Andrew Finko.

PRA offers no authority to support its argument that courts should apply a legal rule that demands a consumer plaintiff prove that he discussed and specifically requested each element of an attorney letter. Such a rule would pose challenges for both courts and consumer attorneys. For courts, the rule would require new scrutiny into the nature of the attorney-client relationship every time a consumer attorney communicates on behalf of his client in ongoing litigation. For consumer attorneys exchanging correspondence with one another, the rule would require the impossible task of distinguishing between messages intended by the attorney alone and messages

from the attorney with client consent. It is not clear how parties like PRA in the future would know which attorney letters were sent pursuant to a legitimate dispute and which could be ignored. Debt collectors have no access to the communications between debtors and their attorneys.

I decline to apply PRA's proposed distinction between legitimate and illegitimate consumer attorney letters. Such a rule "seems to run contrary to established principles of agency and to interfere with an attorney's ability to represent a consumer client." *Rodriguez v. I.Q. Data Int'l, Inc.*, No. 15-CV-383, 2015 WL 7351925, at *2 (N.D. Ill. Nov. 4, 2015). So long as the plaintiff's attorney "acted on [plaintiff's] behalf and made the determination to indicate that the Debt was disputed," the letter from that attorney constitutes a communication from the plaintiff. *Gomez v. Portfolio Recovery Associates, LLC*, No. 15 C 4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016). Thus when PRA received the letter sent on behalf of Bowse, the company should have considered it a communication on behalf of Bowse.

**B. The Contents of the Letter**

PRA also argues that the July 2014 letter does not constitute a dispute. The company points out that Bowse's letter also communicated that Bowse could not pay his debt, the letter was not sent to PRA's disputes department, and the language in the letter differs from language in other letters Finko sent on behalf of other clients. Bowse, on the other hand, argues that the language of the letter is clear, and he disputed the debt when his lawyer sent this letter.

The text of the FDCPA does not provide consumers a specific procedure to follow to effectively dispute a debt. Without specific statutory guidance, the case law is instructive. On three occasions, a court in this District has found that a communication from a consumer to a debt collector indicating that "the amount reported is not accurate" constitutes a dispute about the

7

amount of debt. *Emerson v. Fid. Capital Holdings, Inc.*, No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015) ("[Plaintiff's] statement that 'the amount reported is not accurate' evinces the intention to dispute the validity of at least a portion of the purported debt"); *Rodriguez v. I.Q. Data Int'l, Inc.*, No. 15-CV-383, 2015 WL 7351925, at *1 (N.D. Ill. Nov. 4, 2015) ("It is hard to figure out what it means to complain that a debt is 'inaccurate' without disputing the amount of the debt"); *Gomez v. Portfolio Recovery Associates*, LLC, 15-cv-4499, (N.D. Ill, June 20, 2016) (finding "[i]t was as clear as day based on a plain reading of the Letter from a lay person perspective that [the consumer] was disputing the Debt" when the letter to the defendant stated "the amount reported is not accurate").

In accordance with the other courts in this District, I also find that when Bowse's attorney sent a letter to the defendant that stated "the amount reported is not accurate," Bowse effectively disputed the amount of debt owed to PRA.

PRA argues that the context of the letter created some ambiguity about the meaning of this phrase. This argument is unpersuasive. The title of the letter "Representation Letter" may have revealed that the primary intention of the July 2014 letter was to inform PRA that Bowse had an attorney, but the primary purpose of the letter did not change the clear meaning of a sentence within the letter. Nor did the fact that the phrase was in the third paragraph of a five-paragraph letter make the phrase's meaning any less clear.

PRA also argues that the letter was not a dispute because it was not sent to PRA's disputes department. While directing a letter to the disputes department may have been a more precise method of indicating a dispute, the FDCPA does not designate a specific recipient for dispute letters. Nor does Finko's decision to send the letter to PRA's general counsel reveal any intent to obscure the letter's contents.

PRA argues that Finko's actions taken on behalf of other debtors are relevant to the meaning of the July 2014 letter. Finko has previously used the exact phrase "dispute" when disputing a debt on behalf of other clients, but he did not do that here. Rather, he sent a form letter that he has used on other occasions with other clients. But again, the FDCPA does not require the use of particular words to dispute a debt nor does the statute forbid the use of form letters. PRA describes Finko's representation of Bowse as part of a plan to manufacture claims on behalf of clients to take advantage of a fee-shifting statute. PRA cites to *Huebner v. Midland Credit Mgmt., Inc.*, No. 14 CIV. 6046 (BMC), 2016 WL 3172789 (E.D.N.Y. June 6, 2016) in support of the allegation that Finko has used improper tactics. In *Heubner*, the plaintiff set up a tape recorder and called a debt collector to ask what he needed to do to dispute his debt. *Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015). When the debt collector asked follow-up questions to clarify the purpose of the phone call, the plaintiff refused to give a clear answer and attempted to bait the representative into making misrepresentations about the debt. *Id*. at 674. The plaintiff then filed a lawsuit alleging FDCPA violations stemming from the debt collector's deception during the phone call. *Id*. The court saw the plaintiff's purposeful baiting and premeditated plan to record the phone call as proof of a "setup." *Id*. at 675. The court sanctioned the plaintiff and his attorney for their actions and noted, "Plaintiff and his lawyer decided they were going to outsmart the collection company and make a little money while at it." *Id*.

This record here does not include evidence of a setup or a scheme to outsmart PRA. Bowse has a clear right under the FDCPA to dispute his debt, and Finko asserted this right on behalf of his client in a straightforward manner through a short letter to PRA's general counsel. There was no attempt to entrap PRA. Rather, PRA made the determination on its own that the

9

letter did not constitute a dispute and made subsequent communications with third parties based on that determination. A consumer's right to dispute a debt even without a valid reason is clearly conferred by the FDCPA. *Hoffman v. Partners in Collections, Inc.*, No. 93 C 4182, 1993 WL 358158, at *4 (N.D. Ill. Sept. 14, 1993) ("There is no requirement that any dispute be "valid" for this statute to apply; only that there be a dispute"); *see also DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 162 (2d Cir. 2001) ("The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay.").

I am persuaded that the July 2014 letter contained language the clearly disputed Bowse's debt, PRA's legal department received that letter, and PRA's obligations to report the debt's disputed nature applied even if PRA ultimately would have prevailed in that dispute. PRA was required under § 1692e(8) to inform third parties of this dispute when reporting credit information.

## IV.     The Materiality of the Dispute

PRA argues that even if its failure to communicate the disputed debt violated § 1692e(8), it is only liable under that section if the information was material. Because PRA argues the balance on Bowse's account was indeed accurate, PRA takes the position that the failure to inform the credit agencies ultimately makes no difference to either the agencies or to Bowse.

False statements by debt collectors to consumers only violate § 1692e(8) if they meet the element of "materiality." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). If a debt collector's false statement does not affect a consumer's ability to "choose intelligently" and the false statement would not "mislead the unsophisticated consumer," then the statement does not constitute a violation of § 1692e(8). *Id*. at 757–58. The Seventh Circuit considers

whether a particular statement would actually be misleading according to an "objectively reasonable reading of the communication." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (quoting *Gammon v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254, 1259 (7th Cir.(Ill.) June 24, 1994)).

The Seventh Circuit's case law on materiality is limited to circumstances where the misleading communication was made to consumers, but the materiality requirement extends to all claims under the FDCPA. *See Hahn*, 557 F.3d at 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement."). To consider materiality in this context, the question is how an objectively reasonable credit reporting agency would respond to a communication that fails to mention that a debt was disputed, even when it was.

The Eighth Circuit has noted that the question of whether a debt is disputed is "always material" to a piece of credit information. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). A court in this District, applying the language from *Wilhelm*, has held that "[w]hether or not a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt." *Gomez v. Portfolio Recovery Associates*, LLC, No. 15 C 4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016). The fact that a consumer disputed the debt is an "extremely pertinent piece of information" that could have "far reaching consequences" for a consumer. *Id.*

I agree with the Eighth Circuit and the court in *Gomez* that whether or not a debt is disputed is highly important information that is almost always material for a credit reporting agency. The FDCPA does not permit debt collectors to withhold the disputed nature of debts, even in instances when the debt collector considers that dispute invalid. The violation of § 1692e(8) in the present case was a material violation of PRA's obligation to provide accurate

11

information to third parties about consumers.

## V. The Bona Fide Error Defense

PRA's final argument against liability is that the FDCPA's bona fide error defense applies in this instance. A debt collector otherwise liable under the statute can claim a bona fide error defense under § 1692k(c) of the FDCPA:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C § 1692k(c)

To claim this defense, PRA must show that (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) the defendant maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The threshold issue when considering this defense is whether PRA's determination that the July 2014 letter did not effectively dispute the debt was an error of fact or an error of law. The Supreme Court has held that the bona fide error defense does not apply in the latter circumstance, where "a violation of the FDCPA result[s] from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010).

It is undisputed that PRA received the July 2014 letter and read the portion of the letter that stated "the amount reported is not accurate." Had PRA lost the letter before opening it or never even read the relevant phrase, PRA might have made the sort of "genuine mistake" that the FDCPA permits. *See Kort*, 394 F.3d at 538. But this is a case where PRA received and read the letter, made the determination that the letter did not constitute a dispute, and communicated to

third parties without mentioning any dispute. This was not a genuine mistake but a misinterpretation of the FDCPA. Section 1692k(c) provides no protection for a debt collector who misinterprets his legal requirements under the FDCPA. Thus the bona fide error defense does not apply in the present case.

## CONCLUSION

The undisputed facts show that Peter Bowse communicated his dispute to PRA via clear language in the July 2014 letter, and PRA failed to include this piece of information in its communications with third parties, as is required by FDCPA § 1692(e)(8). For these reasons, I am granting Plaintiff's Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 2, 2016